and I was his attorney at the trial court level. The issue here is whether escape from a security detention facility such as a jail or a prison is a priori a crime of violence for purposes of a career offender provisions. And it was the burden of the government at the time of resettlement to make sure that there was a way to get people out of jail. And that's what we're trying to do here. Why isn't that just inherently dangerous? Aren't most jails, isn't there at least one armed guard in a jail designed to prevent just that kind of an incident from happening? Well, actually at the Yellowstone County Jail, for example, in Billings, I don't think the guards are armed. There are no armed personnel on the site at all. I don't believe so unless by chance there's a police officer or deputy sheriff dropping off a prisoner. Is that in the record? The unarmed guards? No, it's not. And in fact, we're not even talking about the Yellowstone County Jail. We're talking about the Gallatin County Jail. And I'm not personally familiar with that. But what's in the record, what the facts are, is that Shane Savage had been in this jail before, had escaped from this jail before through a hole in a chain link fence that had never been repaired. And he cleverly threw a basketball up, missed the basket, bounced down the hallway and out through the hole. And this is anecdotal. It's not on the record, but apparently Jay Leno mentioned this escape in his dialogue, his monologue. And it is in the record. Can we get him as an accessory after the fact? Well, actually, it's really the facts. This is a modified categorical approach, correct? Absolutely. So I'm curious what facts we can actually look to and which way it cuts. You mentioned unarmed guards. Is that something we can look to? No, that's in the record. And as you go through the facts, the basketball game, you know, what's in the record, what's not, and what can we look to? That's in the record. The record was the original charging information. And when I think about that, Montana law for escape provides enhanced penalties for violence used in an escape. And Mr. Savage was not specifically charged with that extra enhancement in the information, which is Exhibit 1, that the trial court admitted. Exhibit 2 is the combined transcript of the change of plea hearing and the sentencing hearing, which goes into a fair amount of detail about the modus operandi of Mr. Savage's escape. And in there, it is shown that he was playing basketball. It was on a Sunday. He deliberately missed the hoop, went out down the hallway, et cetera, out an unlocked door and out through a hole in the fence. So I would argue that that Gallatin County Jail is not all that secure. And the specific manner and mode of his escape was not dangerous under those circumstances. And, for example, in Piccolo, this Court ruled that a so-called walkaway escape from a halfway house is a priori not dangerous. But I would submit a possible conclusion. Alitoson Could you say a priori? You said a priori. Savage A priori, not dangerous. Alitoson But they also said the case was a for jure not dangerous in light of the Kelly case, which was the attempting to elude a police vehicle. I believe they said, in the case you're citing, that if attempting to elude a police vehicle is not violent, then a for jure, the escape they talked about is not violent. So that's exactly right. And I guess I would have to say that a for jure would be Mr. Savage's particular escape from the Gallatin County Jail was not violent either because he was able to carry that off. I take it you'd make the same argument if this had been a penitentiary and they sort of negligently left the front gate open and guards were looking the other way and he just walks out, even though there's machine gun towers and barbed wires. So you have to have an inquiry every time as to whether there was a risk that somebody could get. I think that's what the modified categorical approach calls for. And I submit that it would not be overly burdensome because, first of all, there aren't that many escape cases that are going to come before the court. Secondly, the source of the facts that's admissible is very limited under Shepard. And, therefore, that would not be that burdensome to the court system to have to do that. And in Mr. Savage's case, specifically … But those are not the kind of facts you would normally put on the record in an escape conviction. I mean, you might, if there was a shooting and somebody got hurt, that might bear on the crime. It might make a different crime if somebody gets shot or it might bear on the substantive enhancement. But, normally, if you're pleading guilty to escape, there would be no particular reason to go through the gore, you know, to questions about what were the guards doing and were they watching, were they not watching. I mean, those kinds of facts wouldn't normally come in. Well, they would, perhaps, in a change of plea colloquy, which is admissible under Shepard. They might, but they wouldn't necessarily. A change of plea colloquy would be, did you, in fact, escape? Were you imprisoned? Did you escape? Did you have permission to leave? Did you leave without permission? That would be the end of it. I mean, you're guilty of escape if you leave the premises without permission, even if they throw open the gates and take down all the guard towers and say, you know, we trust you not to leave. You're still an escapee, right? True, and that's what happened in Piccolo with the halfway house. But in Piccolo, they made a point in saying, we think that the circumstances apparent in a walkaway escape are of an entirely different order of magnitude than escapes from jails and prisons. And later on in that paragraph, say that those who leave without returning from a halfway house do not pose an automatic risk of danger and therefore do not categorically raise a serious potential risk of physical harm. Why don't we understand the court, our colleagues there, to be saying, look, we're looking at a halfway house. It's different from a jail or a prison where you, you know, it's just inherent in the nature of the facility that there's going to be a risk of harm. Well, I can envision a scenario of a walkaway from a halfway house where a person has been there for a few days. Well, that's what they say. We can envision it. We can let you, in a halfway house situation, it says in the footnote, we're not precluding the government from establishing that in a particular halfway house setting. There would have been, but then, but what their premise seems to be is they're distinguishing halfway houses from jails and prisons. And I just find it fairly astonishing to think that an escape from a jail or a prison doesn't just inherently present the, I mean, the guards don't know the risk of danger. The guard who's in a tower doesn't know whether the guy got outside the facility in his prison suit by going through a hole or whatever. He sees him outside, and he says, stop or I'll shoot. Right? Well, and again, that's more describing a federal penitentiary than a prison. Well, it may be, but I don't know. Okay. I mean, I understand your point. There's a scale here. So what's the authority? Is Piccolo your authority? That's it? I think Piccolo is the only case. A halfway house is even more attenuated because you're allowed to walk away from a halfway house. You're allowed to go to your drug testing. You're allowed to go to look for a job. You're allowed to do certain other errands. And so walking away isn't inherently prohibited. And you may not, in fact, escape until you, let's say, you go to your, you're allowed to go for drug testing, let's say, and you go down for the drug testing. And there's no point at which it's absolutely deteriorating escape. It's not like crossing a fence in a secure facility. You could be taken the long way home. You could say, oh, I needed to use a bathroom, and, you know, so I started going straight home. I made a detour where I know there's a public bathroom, so I went a few blocks out of my way. So it's somewhat indefinite. You're in the community. You're mixing with the community. There's no fence. And so if a policeman saw you, you know, you're supposed to stay on this side of the street, and you cross the street, it wouldn't necessarily mean that you're escaping. It could just mean you're going across the street to buy a newspaper. So isn't that what you've got, going in people? There's a possible scenario with a halfway house where a person is there for their first two or three days. They're not allowed to go anywhere for the first seven days. And a guy just strolls out the front door, and one of the CAs, one of the resident people, notices that and knows he's not supposed to leave, and violence ensues. That would be a violent escape from a halfway house. And by the same token, we can have a nonviolent escape from the jail. But I think all we said in PICO law, it's not inherently violent. It could be violent. It's not inherently violent. Right. Because there are lots of possibilities of walking away from a halfway house that don't involve escape. And the escape from a halfway house may not occur on the premises of law. In fact, in that case, escape occurred someplace else. When he goes to this test, I forget what it was exactly that he went to, and then he doesn't come back. And at some point when he deviates from the path of return is when the escape takes place. But going through a fence in a secure facility is actually pretty black and white. Well, there is a difference between a jail and a halfway house. We can see that. But what we're saying is under the modified categorical approach, which permits the court to look at the underlying facts of the conviction, the court should have looked beyond the mere fact of an escape from a jail and looked at the facts that Mr. Savage used to escape and ruled that it was not a crime of violence because, in fact — We are out of time. Thank you very much. Thank you. We'll hear from the government. Good morning, Your Honors. Good morning. Eric Wolf again from the District of Montana. Couldn't stay away, could you? It's been very enjoyable, Your Honor.  Obviously you're aware of all that. Not every circuit has Piccolo and Kelly to deal with. In fact, most circuits disagree with Piccolo. Piccolo is out by itself, so maybe it should be out by itself on this case. Well, I think Piccolo went out of its way to say we're just talking about halfway houses, which the court has pointed out. There is a recent — But someone forgets and it's open, and the guy just kind of walks out. As several circuits have said, when you have an escape, that leads to pursuit. And when the guy in the orange jumpsuit is running through the woods, we have a serious potential danger. To who? Well, first to him because — Well, that's irrelevant to him. But then as soon as you have people with guns and cars, like, speeding after him — Fair enough. And you don't have to prove it up in every case. And the way the guy — this is what's clear about the guideline is it speaks of potential risk. We can imagine a burglary where nobody's home. So there was no risk because nobody was home. We can imagine an arson where nobody's home. But there is some potential risk. You've mentioned the guideline. Conduct that presents a serious potential risk of physical injury to another, so the risk to him is irrelevant. How far into the future do we go? Is it the risk of crawling under the fence, or is it the rearresting him three weeks later? Can we look to the rearresting? You said we look to the woods, which is probably part of the escape. Do we look to the rearrest, which is implied by an escape? There's sort of two issues. In terms of the modified categorical, what do we look to? In this case, we look to Excerpts Record 79. The judge says, why are you pleading guilty? And he says, quote, I escaped from the jail. That's all we need. Okay. In terms of why we presume that every escape from a jail is a crime of violence, I think what the other circuits have said is escape entails pursuit because you're still escaping until we get you. And to give an example. So I assume you're saying we don't look at a rearrest that occurs two weeks later. Correct. We don't look at it once we've sort of made the assumption. But the reason we make the assumption is because of the potential for rearrest. And I'm not relying on this as a reason why this particular case is a crime of violence. But Mr. Savage's circumstances, despite the sort of Hogan's Heroes exit from the Gallatin County Jail, when they actually found him, first in lame deer. He's got this machined slam gun that some officer nearly blows his head off when he picks it up. He then flees to Billings, and he's at a downtown Denny's. And when they come in and identify themselves, he goes to draw, and they have to tase him six times. So that's why the courts have assumed. It's because of that potential scenario. Explain to me then why you are conceding that you don't take into account the rearrest aspect of an escape as part of the. . . As part of the modified categorical. Yeah. The problem is. . . No, no. All you've got is an escape from jail. Right. And then you're saying that's all you need. And the escape from jail, does it not include the concept of rearrest? It includes a concept. The problem in this case is that this plea colloquy is kind of an informal discussion with the judge, and all he really gets the defendant to admit is an escape from the jail. I understand that. I'm just saying it's not clear to me why escape from jail doesn't itself include rearrest. Therefore, you don't need anything more. Isn't the. . . I think I agree with you. I'm not entirely sure. Well, you said before you agree with Judge Guilford that you wouldn't take into account the rearrest. And I'm trying to understand the government's position on that. I don't want to go where the government doesn't think we ought not to go. Sure. We have, like, the threshold legal question. If all I can show is an escape from jail, is that enough? My answer to that is yes. And the reason is because there is a potential danger because of the dangers of going to obtain the person, and that's why we're going to make that assumption. Well, the reason you don't want to go there is that we then have to look at the question of whether or not escape is a continuing offense under Montana law. And some states say it is. Some states say it isn't. And if it is not a continuing offense as in Florida, we don't know. We don't have authority from Montana as to whether it's a continuing offense. Now, it seems more plausible to think of it as a continuing offense, but surprisingly a number of states have said no. So you'd have to – I mean, there may be another crime involved in the rearrest, but he wasn't charged with that crime. He was charged with escape. So the reason you don't want to get into that is it adds this additional complication of Montana law. You think you have enough on the escape itself, but what about the Kelly case, which is cited in Piccolo, which found that attempting to elude a police vehicle didn't come under this statute? And in Piccolo, they found that au forgery, if attempting to elude a police vehicle does not come under the statute, then walking away from a halfway house doesn't elude the statute. Can you help us out on attempting to elude a police vehicle, and if that's not dangerous, then how come crawling under a fence is? Well, I think the problem with Kelly is a problem that comes up in a lot of these cases. We have documents that sort of describe what happened, and it's, like, really bad, and it would clearly qualify, but you can't look at those documents. So I'm looking at Kelly right now. I'm on page 896, and this court had to say, we disregard the alleged factual circumstances of the crime, the high rate of speed, the lack of signaling, the abrupt lane changes. And the reason was that was all from a police affidavit. You can't consider it. I mean, if I could bring that kind of evidence in here, this is, like, an easy case because this guy is very dangerous. And, yes, he got out and did not violate it. I think your answer is we could ignore Kelly because the record in that case was so limited that the potential for violence wasn't apparent. Yes. And escape from jail is a type of offense that it should be assumed has a serious potential risk of danger, which is the guideline language and what every other circuit has held. Well, you've got, for escape from jail, you've got a felony, whereas you could be alluding the police just because you were speeding and it's not clear that they could shoot you for that, whereas it's quite clear that if they're pursuing an escape convict, they could shoot in very serious measures. So if I read Kelly correctly, what they're saying is there are all sorts of situations in which somebody doesn't stop immediately when the police think they should. Maybe they don't think they have a place on the freeway where they can stop conveniently. Officer disagrees. So it's Kelly can be read narrowly and probably will be. Okay, thank you. The case is argued and submitted.
judges: Kozinski, Fisher, Guilford